# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Alpene, Ltd. for an Order Directing Discovery from Elizabeth McCaul Pursuant to 28 U.S.C. §1782 | Case No. 21-mc-2547 |

### DECLARATION OF EDWARD BALDWIN IN SUPPORT OF ALPENE, LTD.'S OPPOSITION TO RESPONDENT'S MOTION TO VACATE ORDER GRANTING DISCOVERY PURSUANT TO 28 U.S.C. § 1782, AND FOR RELATED RELIEF

I, Edward "Teddy" Baldwin, declare under penalty of perjury as follows:

1. I am counsel for Alpene, Ltd. ("Alpene") in the above titled action.

2. I am also counsel for Alpene in the international arbitration proceeding pending before the International Centre for the Settlement of Investment Disputes ("ICSID") titled *Alpene Ltd v. Republic of Malta* (ICSID Case No. ARB/21/36) (the "Treaty Arbitration"). ICSID registered the Treaty Arbitration on July 2, 2021.

3. I have assisted clients with multiple applications for discovery pursuant to 28 U.S.C. § 1782 ("Section 1782") in connection with international arbitrations brought pursuant to bilateral investment treaties ("BITs").

4. My primary practice for the last 15 years is representing either foreign investors or states in investor-state arbitrations. These arbitrations are typically brought pursuant to BITs or multi-lateral investment treaties, such as the Central American Free Trade Agreement ("CAFTA"). I am very familiar with the international law standards and requirements regarding the types of claims investors bring in investor-state arbitrations. This familiarity includes an

understanding of the evidence needed to prevail on claims or to defend against those claims in investor-state arbitrations brought pursuant to BITs.

5. My practice also consists of the enforcement of investor-state arbitration awards in U.S. courts. These cases sometimes involve an analysis of the substantive legal issues that arise in international law with respect to BITs and customary international law. For example, I acted as lead counsel to the Government of Canada in an action to enforce its award and resist vacatur of the award rendered in the *Mesa Power Group, LLC v. Government of Canada*, UNCITRAL, PCA Case No. 2012-17 arbitration. In that enforcement proceeding before the federal court in D.C., we defended the arbitration tribunal's analysis and findings with respect the amount of deference due regulators under international law with respect to fair and equitable treatment, as defined as the minimum standard of treatment in NAFTA. Thus, I have discussed and analyzed international law in the U.S. courts with respect to treaty claims.

6. I have reviewed the Motion to Vacate Order Granting Discovery Pursuant to 28 U.S.C. § 1782, and for Related Relief, including the accompanying Memorandum and materials, submitted by Respondent in the above-referenced case. The Respondent argues that Alpene's Section 1782 application (the "Application") has been brought in bad faith or for some other purpose. This is not true. The Application was brought to obtain discovery from Respondent to be used in the Treaty Arbitration and for no other purpose. The discovery requested from Respondent is relevant to Alpene's claims in the Treaty Arbitration, and particular with respect to its claim for a breach of the fair and equitable treatment provision of the Malta-China bilateral investment treaty ("Malta BIT" or the "Treaty"). The lawyers for Alpene in this Application did not discuss Alpene's Application with Pilatus Bank counsel in proceedings in Malta or elsewhere. Counsel for Alpene further did not make the Application for use in any other

proceeding. In fact, I had not discussed or communicated with Pilatus Bank's counsel in the Malta proceeding until preparing this Opposition to the Motion. The accusation that this Application is used to collect evidence for another proceeding is flatly wrong. The purpose of this Application is to gather evidence that will assist the tribunal in the Treaty Arbitration with respect to the legal issues. Similarly, Alpene's counsel in this Application were not involved in the filing of the Pilatus Application. One of our partners who represented Sadr in the criminal proceedings wrote a letter regarding those proceedings. But counsel in the Treaty Arbitration and in this proceeding were not involved. We have not spoken with Pilatus Bank counsel that represented the Bank in the New Hampshire case about our application, their application, or even about Pilatus Bank.

7. The discovery sought in this case is relevant to Alpene's claims in the Treaty Arbitration. As set out more fully in Alpene's Opposition Memorandum in this case, Alpene's central claim is for a violation of the fair and equitable treatment ("FET") provision in the Malta BIT. FET is a widely used claim in arbitrations brought pursuant to BITs. It requires the tribunal to examine a wide range of facts to determine whether the state has acted fairly and equitably. I often compare it to an alter ego analysis in the U.S. It is heavily fact intensive and has no strict standards for finding liability. Each measure taken by the state, or by a person acting on behalf of the state, is examined to determine whether it violates the standard either as an individual measure or as a series of measures.

8. Alpene's claims in the Treaty Arbitration relate to a series of actions or measures taken by Maltese officials against Pilatus Bank. The Treaty allows for indirect owners, such as Alpene, to bring claims for wrongful actions taken against their investment. In the Treaty Arbitration, Alpene seeks compensation for the loss in value of its indirect ownership that

resulted from Malta's actions. Thus, actions that affect the value of Pilatus Bank, including the loss of its assets, affects the value of Pilatus Bank and ultimately the shares of the Bank.

9. In addition, the value of the indirect shares of the Bank are affected by a loss of control of the Bank. The market value of a Bank controlled and operated by the government is much less than the value of a Bank operated by its board of directors and executives. Thus, the actions of those operating the Bank, and the actions they took with respect to the assets of the Bank, are central issues in the Treaty Arbitration.

10. Upon information and belief, Malta has retaliated against Alpene's investment following our notice of intent to file the arbitration and the actual filing. Alpene intends to prove that Malta's actions with respect to the indictment of the Bank and a fine were retaliations against Alpene's investment. The Bank's indictment and fine postdate the filing of the Request for Arbitration. The indictment came right after the filing of this 1782 Application, which was sent to Maltese officials when filed.

11. Prior to the arrest of Sadr, the MFSA had audited and investigated the Bank and found it to be in compliance. See Exhibit 11 to this declaration. Even after the arrest of Sadr, and the investigation dictated by Respondent and the MFSA, Respondent did not indict the Bank for 2.5 years and only then *after* the filing of the Treaty Arbitration. In my experience, is not uncommon for corrupt states to retaliate against foreign investors for bringing claims.

12. Attached as Exhibit 1 is a copy of an email from Carlo Comporti to Hanna Olofsson, dated March 6, 2017 regarding a meeting between Pilatus Bank and Promontory.

13. Attached as Exhibit 2 is a copy of an email from Carlo Comporti to Ali Sadr, dated March 10, 2017 transmitting a proposal from Promontory.

14. Attached as Exhibit 3 is a copy of a proposal from Promontory to Pilatus Bank, dated March 9, 2016 [sic].

15. Attached as Exhibit 4 is a copy of email string dated June 21, 2018 in which both Luciano Giuliano's and Lawrence Connell's Promontory emails are used.

16. Attached as Exhibit 5 is copy of an invoice from Carlo Comporti to Lawrence Connell on behalf of Pilatus Bank, dated July 30, 2018.

17. Attached as Exhibit 6 is a copy of an email from Lawrence Connell to Ray Vella dated August 9, 2018 in which Connell seeks to have Pilatus Bank pay Promontory's invoice.

18. Attached as Exhibit 7 is a copy of an email between Ray Vella and Lawrence Connell dated September 2 and September 3, 2018, in which Connell uses his Promontory email and in which Planera discusses a promise he made to McCaul.

19. Attached as Exhibit 8 is a copy of an email between Ray Vella and Lawrence Connell dated October 2, 2018, in which Connell uses his Promontory email.

20. Attached as Exhibit 9 is a copy of an email from Lawrence Connell to Lawrence Connell dated October 12, 2018, in which Connell sends himself a Pilatus Bank document from his Promontory email to another email.

21. Attached as Exhibit 10 is a true and correct copy from the National Registry of Exonerations discussing the exoneration of Ali Sadr.

22. Attached as Exhibit 11 is a true and correct copy of a transcript of a European Parliament Hearing on April 26, 2018 regarding money laundering.

23. Attached as Exhibit 12 is a true and correct copy of a description from the International Centre for the Settlement of Investment Disputes ("ICSID") of their screening and registration cases. ICSID has screened and registered this request. ICSID officials sent Alpene's

Request for Arbitration, along with an accompanying letter, to Maltese officials after Alpene submitted the Request for Arbitration but prior to the registration of the Treaty Arbitration. To my knowledge, Malta never responded to the ICSID's transmission of the Request for Arbitration. To my knowledge, Malta did not raise any objection with respect to a failure to exhaust local remedies. Malta could, in fact, raise such objections at some point in the proceeding, but has not done so.

24. Attached as Exhibit 13 is a true and correct copy of a list from the Financial Action Task Force of the jurisdictions under increased monitoring as of June 2021. Being on this list is commonly referred to as being "grey listed."

25. Attached as Exhibit 14 is a true and correct copy of an article from Sven Giegold, a member of the European Parliament, discussing the grey listing of Malta by the Financial Action Task Force.

26. Attached as Exhibit 15 is a true and correct copy of a July 30, 2021 article from the Times of Malta regarding a new CEO of the Malta Financial Services Authority ("MFSA").

27. Attached as Exhibit 16 is a true and correct copy of a July 30, 2021 article from the Times of Malta regarding a scheme to force the retirement of top MFSA officials.

28. Attached as Exhibit 17 is a true and correct copy from December 1, 2021 of the LinkedIn page of Dr. Joe Bannister, the former Chairman of the MFSA.

29. Attached as Exhibit 18 is a true and correct copy of a January 27, 2020 article from The Shift regarding testimony of Joseph Bannister.

30. Attached as Exhibit 19 is a true and correct copy of the Declaration of Jonathan Thompson, dated March 30, 2021, with accompanying exhibits, submitted in Case No. 20-mc-0094-JD (D.N.H.).

31. Attached as Exhibit 20 is a true and correct copy of a Transcript of the Hearing of the Financial Services Tribunal in Valletta, Malta from July 4, 2018.

32. Attached as Exhibit 21 is a true and correct copy of a January 28, 2021 article from The Malta Independent regarding Malta hitting a "new all-time low" in the Corruption Perceptions Index.

33. Attached as Exhibit 22 is a true and correct copy of the arbitration award in *Rumeli Telekom A.S. and Telsim Mobil Telekomunikasyon Hizmetleri A.S. v. Republic of Kazakhstan*, ICSID Case No. ARB/05/16, dated July 29, 2008.

34. Attached as Exhibit 23 is a true and correct copy of a journal article by Rudolf Dolzer from the Santa Clara Journal of International Law from 2014 regarding the fair and equitable treatment provision.

35. Attached as Exhibit 24 is a true and correct copy of a report from the United Nations Conference on Trade and Development, dated July 2012, on Expropriation as part of its series on Issues in International Investment Agreements.

36. Attached as Exhibit 25 is a true and correct copy of the decision on jurisdiction and admissibility in the *Ambiente Ufficio v. Argentina*, [2013] ICSID Case No. ARB/08/9 arbitration.

37. Attached as Exhibit 26 is a true and correct copy of the decision on jurisdiction and admissibility in the Abaclat and Others v. Argentine Republic [2011] ICSID Case No. ARB/07/5 arbitration.

38. Attached as Exhibit 27 is a true and correct copy of the Reporter's Guide to Applications Pending Before The Supreme Court of United States prepared by the Public Information Office of the Supreme Court.

39. Attached as Exhibit 28 is a true and correct copy of an article from the Times of Malta, dated January 28, 2021, regarding corruption in Malta.

40. Attached as Exhibit 29 is a true and correct copy of the partial award in the *Saluka Investments BV v. Czech Republic*, ad hoc arbitration, dated March 17, 2006.

41. Attached as Exhibit 30 is a true and correct copy of a letter from the undersigned to Michael Keats, dated November 5, 2021, regarding this matter.

42. When evaluating a failure to exhaust local remedies objection, tribunals often consider the triple identity test. This test is similar to *lis pendens* and states that an exhaustion only applies when you have the same parties, the same facts, and the same law. Alpene is not seeking directly to have the license returned or the assets of the Bank returned or reimbursed. Rather, Alpene is seeking compensation for damages for the harm done to Alpene's investment, which is its indirect ownership of the Bank. Unlike Pilatus Bank, which seeks separate remedies under Maltese law, Alpene's claims arise under the Treaty and are based in international law.

43. Alpene cannot examine witnesses for whom Malta has not submitted a witness statement. Alpene does have the ability to request that the tribunal call a witness for examination. But this ability has a significant limitation in that the tribunal is only empowered to call for witnesses who are under the direct control of Malta. The tribunal does not have the ability to call witnesses who no longer work directly for the Maltese government. The tribunal certainly does not have the ability to call McCaul as a witness. In addition, because the tribunal does not have subpoena power, the tribunal does not have the ability to force the attendance of a witness, even when that witness is under the control of the party. Thus, even if the tribunal were to call for a witness controlled by Malta, that witness' appearance and testimony could not be compelled by power of a subpoena.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 1, 2021.

                                                 /s/ Edward Baldwin
                                                STEPTOE & JOHNSON
                                                1330 Connecticut Avenue NW
                                                Washington, DC 20036
                                                Tel: (202) 429-3000
                                                Fax: (202) 429-3902
                                                Email: ebaldwin@steptoe.com

Dated: December 1, 2021
Washington, DC