UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Alpene, Ltd. for an Order Directing Discovery from Elizabeth McCaul Pursuant to 28 U.S.C. § 1782 | 1:21-mc-2547-MKB-RML |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO VACATE ORDER GRANTING DISCOVERY PURSUANT TO 28 U.S.C. § 1782, AND FOR RELATED RELIEF**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i
TABLE OF AUTHORITIES ..................................................................................................... ii
PRELIMINARY STATEMENT ................................................................................................ 1
I.    THE APPLICATION DID NOT SATISFY THE "FOR USE" REQUIREMENT ............ 2
II.   ALPENE SEEKS MATERIALS PROTECTED FROM DISCLOSURE .......................... 5
III.  THE DISCRETIONARY FACTORS WEIGH AGAINST DISCOVERY ........................ 7
IV.  THE ARBITRATION IS NOT A FOREIGN OR INTERNATIONAL TRIBUNAL ....... 9
CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Caratube Int'l Oil Co.*,
  730 F. Supp. 2d 101 (D.C.C. 2010) ............................................................................9

*Carter-Wallace, Inc. v. Otte*,
  474 F.2d 529 (2d Cir. 1972) ....................................................................................8, 9

*In re Chevron Corp.*,
  709 F.Supp.2d 283 (S.D.N.Y. 2010) ..........................................................................10

*In re financialright Gmbh*,
  2017 WL 2879696 (S.D.N.Y. June 23, 2017) .............................................................5

*Fund for Protection of Investor Rights in Foreign States v. AlixPartners, LLP*,
  5 F.4th 216 (2d Cir. 2021) .....................................................................................9, 10

*In re Guo*,
  965 F.3d 96 (2d Cir. 2020) .........................................................................................10

*Intel v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ..........................................................................................6, 7, 10

*In re Lloreda*,
  323 F. Supp. 3d 552 (S.D.N.Y. 2018) ..........................................................................3

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ...............................................................................2, 3, 6

*In re Microsoft Corp.*,
  428 F. Supp. 2d 188 (S.D.N.Y. 2006) .......................................................................6, 8

*In re Republic of Turkey*,
  2020 WL 4035499 (D.N.J. July 17, 2020) ..................................................................5

**Statutes**

28 U.S.C. § 1782 ............................................................................................... *passim*

## PRELIMINARY STATEMENT

Ms. McCaul's moving brief demonstrated that Alpene's Application is an attempted end run around a decision by the District of New Hampshire denying Sadr's prior attempt under the guise of Pilatus Bank to obtain the same discovery from Mr. Connell, who served as the Competent Person appointed by the MFSA to administer Pilatus Bank.[1] Nothing in Alpene's Opposition refutes that showing. Alpene does not even try to defend its failure to disclose that prior proceeding to this Court, other than to claim it was brought by a different entity and by a different law firm, though Alpene is forced to concede, as it must, that Alpene owns and control Pilatus Bank, that Pilatus Bank is entirely aligned in interest with Alpene, that both entities are ultimately owned and controlled by Sadr, and that Sadr's counsel is also Alpene's counsel. Sadr's tactics should not be rewarded, and Ms. McCaul's Motion should be granted.

Unable to justify a new proceeding against Ms. McCaul, Alpene resorts to misrepresenting the documentary and testimonial record, including by relying on Pilatus Bank documents from years *before* Pilatus Bank's seizure by the MFSA after Sadr was arrested for alleged money laundering and U.S. sanctions violations. But whatever tortured "spin" Alpene puts on those documents, Alpene neglects to point out that Ms. McCaul authored *none of them* and indeed is copied on *none of them*, and none of those documents relate to the administration

---

[1] Capitalized terms have the same meaning as in the Memorandum of Law in Support of the Motion to Vacate Order Granting Discovery Pursuant to 28 U.S.C. § 1782, and for Related Relief (Doc. No. 15). Alpene's Memorandum of Law in Opposition (Doc. No. 22) is referred to as the "Opposition," and all filed documents are cited by their docket number. "Ex." refers to Exhibits 28-30 attached to the Reply Declaration of Michael Keats ("Reply Decl."). Unless otherwise noted, emphasis is added and internal citations and quotations are omitted.

of Pilatus Bank. No amount of spin can manufacture a role for Ms. McCaul that she did not have, as only Mr. Connell served as the Competent Person for Pilatus Bank.

The discovery sought by Alpene has no bearing on its expropriation Arbitration. Ms. McCaul's recommendation of Mr. Connell has no bearing on whether Malta treated Pilatus Bank more or less favorably than similarly situated Maltese domestic banks—a comparison presumably that requires looking at how Malta has dealt with other banks whose Chairmen and sole owners were arrested for money laundering and sanctions violations. Accordingly, Alpene cannot satisfy the requirement that the discovery sought is "for use" in its Arbitration.

**I.    THE APPLICATION DID NOT SATISFY THE "FOR USE" REQUIREMENT**

*The information is not relevant to the Arbitration.* The Application did not include any substantive discussion of the "for use" requirement and instead relied entirely on a single conclusory statement that discovery sought was "for use" in the Arbitration. Doc. No. 1 ¶7, Doc. No. 4 ¶16, Doc. No. 5 at 10. Given the Application's complete failure to address this statutory requirement, the Court should grant the Motion as there was not a proper basis to invoke Section 1782. *See Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015) ("[A] request that fails to show that the materials sought will be of any use in the foreign proceeding would not satisfy the 'for use' requirement.").

Effectively conceding that the Application failed to address this requirement, Alpene tries to impermissibly amend the Application through its Opposition, including by having Alpene's lawyer in this proceeding impermissibly testify as an expert witness on international law. Even if the Court were to permit such efforts (and it should not), Alpene still does not satisfy the "for use" requirement. Alpene claims that the information sought is relevant to its fair and equitable treatment claim primarily because Mr. Connell's "selection was wrongful and not transparent."

2

Doc. No. 22 at 11.[2] Alpene still has not given a meaningful explanation for how any of the discovery actually bears on the Arbitration and would increase Alpene's chance of success. Doc. No. 15 at 11-12; *see In re Lloreda*, 323 F. Supp. 3d 552, 558 (S.D.N.Y. 2018) ("Petitioner has not adequately explained, however, how any of the information that he requests is relevant...."). Alpene's claim that the selection process was not transparent is not clearly asserted in its arbitration demand and in any event Alpene's claim in the arbitration involves a comparison against the process employed by the MFSA in similar circumstances.

Even if the Court were to find that there was some relevance to the discovery sought, the Court should exercise its discretion to grant the Motion. It is well established in the Second Circuit that if the discovery "appears only marginally relevant to the foreign proceeding," then it is "grounds for a discretionary denial of discovery." *Mees*, 793 F.3d at 229 n.10. Such a denial is appropriate here because the information sought has no relevance to the Arbitration, and Alpene failed to disclose the denials of the prior applications by Pilatus Bank to obtain the same information from Mr. Connell. Doc. No. 15 at 18-19. Alpene tries to excuse its failure to disclose that decision by claiming that it was a proceeding brought by a separate entity represented by different lawyers (though Alpene concedes a Steptoe partner wrote a letter in connection with that application.) Doc. No. 22-1 ¶6. Alpene admits it wholly owns the Maltese entity that owns Pilatus Bank and all of the entities are controlled by Sadr. Doc. No. 5 at 1, 4. No manner of shell games can excuse the nondisclosure of that prior denial of relief.

***Alpene misconstrues the import of its failure to exhaust local Maltese remedies.***
Alpene's failure to exhaust local remedies before filing the Arbitration makes the Arbitration

---

[2] Alpene claims deposition topic 2 includes "the directions" given to Mr. Connell (Doc. No. 22 at 11) but the deposition is limited to the negotiations of Mr. Connell's engagement letter, Doc. No. 16-2, pdf p. 59.

ripe for a preliminary objection, and Malta's counsel intends to submit a preliminary objection. Reply Decl. ¶3.[3] Even with a skewed interpretation of case law regarding the exhaustion of local remedies and relying on impermissible expert testimony, the Opposition concedes the failure to exhaust local remedies is a basis for a preliminary objection. *See* Doc. No. 22-1 ¶23. It is telling that Alpene filed its Application before the Arbitration tribunal was constituted and before any ruling on the propriety of the Arbitration could be obtained. Absent such a ruling, Alpene cannot show the discovery can be used in the Arbitration. Doc. No. 15 at 14.

***Alpene distorts the record regarding Ms. McCaul's participation***. Unable to cite a single email that Ms. McCaul either sent or was even copied on, Alpene engages in a tortured interpretation of Mr. Connell's testimony to claim that Ms. McCaul selected him, when it is clear that the Promontory team provided his name and facilitated an introduction and that the MFSA selected Mr. Connell. The lone email that even references Ms. McCaul was authored by one of Mr. Connell's staff who refers to making a commitment to Ms. McCaul to complete an assignment for Mr. Connell before completing his services. That does not show Ms. McCaul played any role in connection with Mr. Connell's work, the administration of the Bank, or directed Mr. Connell's work as the Competent Person. As the unrefuted record shows, Mr. Connell was appointed as the Competent Person in his individual capacity.

Alpene's claim that Promontory's engagement was caused by Sadr's indictment and arrest mistakenly relies on an email noting a reference to an engagement letter with "an effective date" of March 20, 2018. An engagement letter's "effective date" is not synonymous with when work began. Promontory's work predated Sadr's indictment and arrest and was not instigated by

---

[3] Preliminary objections are due within 30 days after the tribunal is constituted under Rule 41(5). Ex. 28.

those events. Doc. No. 17 ¶4. The reference to an engagement letter with a March 20, 2018 "effective date" is consistent with Promontory's work predating Sadr's indictment and arrest.

## II. ALPENE SEEKS MATERIALS PROTECTED FROM DISCLOSURE

Alpene's claim that the privileges, immunities, and confidentiality protections afforded to Ms. McCaul can be addressed by a confidentiality order deliberately misconstrues the MFSA's letter. Maltese law requires a person in certain circumstances keep information secret (akin to a privilege in the United States), and the MFSA has written an authoritative letter demonstrating that the prohibition applies to Ms. McCaul and prohibits disclosure of most of the information sought by Alpene. *See* Doc. No. 16-26. Allowing disclosure to Alpene (while preventing disclosure to non-parties) still vitiates Maltese law by disclosing the information.[4]

The assertion that the Subpoenas are appropriate because "business relationships outside of any purported regulatory order" are not covered by a privilege or confidentiality obligation ignores that there has been no showing that information has any bearing on the Arbitration. Doc. No. 22 at 18. That questions about irrelevant topics or matters of the public record may fall outside the protections under Maltese law does not mean that the Subpoenas are permissible.

Alpene's reliance on a declaration regarding the application of Maltese law to Mr. Connell in Sadr's prior effort to obtain discovery does not carry the weight of an expert report because it was submitted by the lawyer for Pilatus Holdings, which is wholly owned by Alpene. Doc. No. 5 at 1. Alpene ignores that Ms. McCaul is not similarly situated to Mr. Connell. Alpene's declaration relies on Mr. Connell's role as "a caretaker of the bank" and that

---

[4] The Opposition's own citations demonstrate that district courts narrow or deny discovery where valid privilege concerns are raised. *See In re Republic of Turkey*, 2020 WL 4035499, at *9-10 (D.N.J. July 17, 2020) (exercising discretion to deny discovery based on privilege-related concerns); *In re financialright Gmbh*, 2017 WL 2879696, at *7-8 (S.D.N.Y. June 23, 2017) (because discovery sought "may be covered by either attorney-client privilege or the work-product doctrine or both" Section 1782's statutory requirements are not satisfied).

5

his "salary and expenses were all paid for by the Bank and not by the MFSA." Doc. No. 22-20 ¶¶7, 8. Ms. McCaul worked at Promontory, and Promontory was engaged by the MFSA as a consultant regarding its prudential bank regulatory oversight process and procedures. Doc. No. 17 ¶¶3, 4. Alpene's reliance on a declaration addressing a differently situated person cannot overcome the authoritative proof of Ms. McCaul's obligations under Maltese law. Similarly faulty is Alpene's reliance on Mr. Connell's testimony before a Maltese tribunal because it ignores objections based on Mr. Connell being "bound by a confidentiality agreement with the MFSA not to disclose any information." *See* Doc. No. 22-21 at 21. Lastly, Alpene's claim that the immunities afforded to Ms. McCaul as a member of the ECB are irrelevant overlooks that the Subpoenas seek information during the time Ms. McCaul has worked for the ECB.

Alpene's assertion that Ms. McCaul is seeking to hide behind a blanket assertion of privilege is both factually and legally misplaced. Ms. McCaul has not made and does not make a blanket claim of privilege. *See* Doc. No. 15 at 15-16. Section 1782 expressly safeguards privileges and the Supreme Court in *Intel* identified as a relevant considerations any attempt to circumvent foreign proof gathering restrictions. *See Mees*, 793 F.3d at 303 n.20 ("[P]roof-gathering restrictions are best understood as rules akin to privilege that prohibit the acquisition...of certain materials..."). Thus, Alpene's reliance on cases involving civil litigation outside of Section 1782 are unavailing. Under Alpene's construction, this *Intel* factor could never support a target of a Section 1782 application because any privilege assertion would be too general. *See In re Microsoft Corp.*, 428 F. Supp. 2d 188, 196 (S.D.N.Y. 2006) (quashing subpoenas as the information "*may be* protected as confidential by the Commission's rules on access to file and that are privileged under U.S. law.").

Alpene's claim that there has been a waiver of the applicable privileges, immunities, and confidentiality obligations is not supported by law or logic. Alpene has failed to show the concept of waiver applies to the obligations imposed under Maltese or EU law, and does not indicate any specific statement in that operates as a waiver. Moreover, there is nothing in Ms. McCaul's declaration that can be construed as operating as a waiver, as it addresses similar issues to those in Mr. Connell's testimony. Moreover, Ms. McCaul's declaration is consistent with the directive in the MFSA's letter, which provides that most, but not all, of the information is protected from disclosure. *See* Doc. No. 16-26.

### III. THE DISCRETIONARY FACTORS WEIGH AGAINST DISCOVERY

Alpene acknowledges it can seek documents in Malta's possession, custody, or control. Doc. No. 22 at 22. The document Subpoena primarily seeks correspondence between Ms. McCaul and representatives of the MFSA, Doc. No. 16-2, pdf p. 54, and is not limited to "matters outside of Promontory's engagement with the MFSA," Doc. No. 22 at 23. Indeed, the document Subpoena expressly seeks "Documents regarding Your Relationship and discussions or communications...",[5] which encompasses communications Ms. McCaul would have had as part of Promontory's engagement with the MFSA and as a member of the supervisory board. Moreover, that certain individuals no longer work at the MFSA does not mean Malta lacks control over their documents—given these individuals used MFSA email. *See* Doc. No. 22-8.

Alpene's attempt to defend its efforts to take Ms. McCaul's deposition fares no better. Alpene claims that "much of the information sought relates to discussions and actions that McCaul had with former Promontory staff or Promontory 'consultants'" (Doc. No. 22 at 21);

---

[5] The Subpoena defines "Relationship" as "the commonly understood definition of relationship, as understood in its broadest sense, to mean any financial or non-financial relationship, or any other manner in which two people are connected in any sense." Doc. No. 16-2, pdf p. 50. This does not exclude Promontory's work.

7

however, that assertion is undermined by the Subpoenas. Not a single request expressly mentions communications Ms. McCaul had with other individuals at Promontory or with Mr. Connell and/or his staff. Indeed, the second, third, and fourth topics address communications Ms. McCaul may have had with the MFSA. Doc. No. 16-2, pdf p. 59. With respect to the first topic, Ms. McCaul did not select Mr. Connell to be the Competent Person and, thus, that topic, at best, seeks information regarding the MFSA's decision-making process.

Alpene claims that Mr. Connell did not remember the names of any other individuals at a briefing to justify Ms. McCaul's deposition but overlooks that Mr. Connell identified the MFSA's Ms. Marianne Scicluna and Mr. Ray Vella as attending the briefing. Doc. No. 22-21 at 21. That certain individuals are no longer employed by the MFSA does not support permitting Alpene to take Ms. McCaul's deposition because the deposition topics seek information regarding the MFSA and, thus, could be sought through requests for production from Malta. *See In re Microsoft Corp.*, 428 F. Supp. 2d at 193-94 ("The relevant inquiry is whether the evidence is available to the foreign tribunal."). Moreover, Alpene's own exhibit identifies Mr. Bannister as an "[a]dvisor on Financial Services Policy, Malta Government." Doc. No. 22-18 at 2.

Alpene's reliance on the supposed principle that "when the ordinary witness is unavailable, his unique knowledge of the facts will be lost..." does not help carry its burden. Doc. No. 22 at 21. The quotation from *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir. 1972), that the Opposition conveniently omits with ellipsis underscores the case is not relevant because Judge Friendly was discussing the "use of prior testimony" a witness has already given, and, thus, the quotation assumes the witnesses' prior testimony is appropriate under the Federal Rules. *Id*. at 536-37. That stands in contrast to here where the Subpoenas do not comply with the Federal Rules and Section 1782. *See* Doc. No. 15 at 20-21. Indeed, Alpene has not offered

8

any explanation for the breadth of the Subpoenas, which seek information from four years before Sadr's arrest and indictment and continuing to the present. *Carter-Wallace* does not permit Alpene to burden an individual with discovery not in compliance with the Federal Rules.

The Subpoenas are a continuation of Sadr's scorched-earth litigation strategy and are designed to harass by pursuing irrelevant inquiries and invading communications and documents protected from disclosure. Alpene has elected to file and pursue its Application before the Arbitration tribunal has even been constituted and the tribunal has even had the opportunity to address whether it would be receptive from evidence obtained under Section 1782. It would contravene the premise of ICSID arbitrations for the Court to order discovery before the parties have negotiated the rules of their arbitration. *See In re Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 106-07 (D.C.C. 2010) (denying discovery in connection with an arbitration before ICSID).

Alpene's nondisclosure of the District of New Hampshire's prior order regarding Mr. Connell and its serial misrepresentations of the record show it has come to this Court with unclean hands seeking discretionary relief and, therefore, the Motion should be granted.

## IV. THE ARBITRATION IS NOT A FOREIGN OR INTERNATIONAL TRIBUNAL

Alpene acknowledges there is a pending petition for certiorari in *Fund for Protection of Investor Rights in Foreign States v. AlixPartners, LLP*, 5 F.4th 216 (2d Cir. 2021) while relying on that case to address the international or foreign tribunal requirement. Doc. No. 22 at 23-24; Doc. No. 5 at 11. The Supreme Court granted certiorari in *AlixPartners* and *ZF Automotive US, Inc. v. Luxshare* (which also raises the scope of Section 1782) on December 10, 2021.[6] Ex. 30. The issue of whether the arbitration pursuant to an investment treaty satisfies Section 1782's

---

[6] The parties in *AlixPartners* voluntarily agreed to stay discovery. *See* Ex. 29.

9

foreign or international tribunal is now squarely before the Supreme Court, and will be decided by the end of June 2022. It wastes the Court's time to decide this issue when the Supreme Court has granted certiorari in the case that Alpene's presented as its primary authority. Delaying the resolution of this proceeding until after the Supreme Court issues its decision preserves the Court's resources, and does not prejudice Alpene as the tribunal has not yet been constituted, there has not been a ruling addressing whether the Arbitration was properly filed, and the tribunal has not expressed its view regarding the appropriateness of discovery.

Alpene claims that the moving brief did not need to show that "private commercial arbitration" falls outside Section 1782, while failing to recognize that its Application claimed "private arbitration tribunals" satisfied Section 1782. Doc. No. 5 at 11. The reason the Application made such an erroneous claim is that there are no substantive differences between "private arbitration tribunals" and investment treaty arbitration. Doc. No. 15 at 22. The Second Circuit has not adopted a bright-line rule that investment treaty arbitrations satisfy Section 1782, and Alpene has not addressed the analysis required by the Second Circuit's *Guo* decision. *Guo*, 965 F.3d at 107. In *AlixPartners*, the Second Circuit applied the *Guo* factors to a dispute under a different investment treaty that did not involve ICSID arbitration. *AlixPartners*, 5 F.4th at 225-26. Moreover, despite asserting that "courts in this District" have found investment treaty arbitration satisfies Section 1782, Alpene cites no such case. *Id*. at 24-25.[7]

---

[7] The Southern District's decision in *In re Chevron Corp.*, 709 F.Supp.2d 283, 291 & nn. 43, 44 (S.D.N.Y. 2010), is of no help because the court stated its decision was based on a quotation from a law review article in *Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004). The Second Circuit has made clear that that citation is not a basis to find that an arbitration satisfies Section 1782. *In re Guo*, 965 F.3d 96, 104-106 (2d Cir. 2020).

## **CONCLUSION**

For the foregoing reasons, Ms. McCaul respectfully requests that the Court grant her Motion.

Dated: New York, New York
December 13, 2021

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By:      /s/ Michael C. Keats
          Michael C. Keats

Justin Santolli
One New York Plaza
New York, New York 10004-1980
(212) 859-8000
michael.keats@friedfrank.com
justin.santolli@friedfrank.com

Attorneys for Elizabeth McCaul

27015441