UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE APPLICATION OF ALPENE, LTD.      MEMORANDUM
FOR AN ORDER DIRECTING DISCOVERY     AND ORDER
FROM ELIZABETH McCAUL PURSUANT     21 MC 2547 (MKB)(RML)
TO 28 U.S.C. § 1782
-----------------------------------------------------------X
LEVY, United States Magistrate Judge:

        Alpene Ltd. ("Alpene") commenced this case on August 30, 2021, seeking an order authorizing it to issue subpoenas for documents and testimony to Elizabeth McCaul ("McCaul") in aid of a foreign proceeding, pursuant to 28 U.S.C. § 1782. By order dated September 9, 2021, the Honorable Margo K. Brodie, United States District Judge, referred the application to me. On September 20, 2021, I granted the request. (See Order, dated Sept. 20, 2021.) McCaul filed the instant motion to vacate, and for an order quashing and granting a protective order with respect to the document and deposition subpoenas, on November 11, 2021. (See Motion to Vacate, dated Nov. 11, 2021, Dkt. No. 14; Memorandum of Law in Support of Motion to Vacate Order Granting Discovery Pursuant to 28 U.S.C. § 1782, dated Nov. 11, 2021, Dkt. No. 15.)

        Because the United States Supreme Court had granted certiorari in AlixPartners, LLP v. The Fund for Protection of Investors' Rights in Foreign States, 142 S. Ct. 638 (2021), cert. granted, No. 21-518, 2021 WL 5858633 (U.S. Dec. 10, 2021), which had the potential to affect the outcome of this matter, I stayed the application pending the Court's decision. (See Memorandum & Order, dated Feb. 3, 2022 (the "M&O"), Dkt. No. 26.) On June 13, 2022, the Supreme Court issued a unanimous decision in AlixPartners, which was consolidated with a case called ZF Automotive US, Inc. v. Luxshare, Ltd. See ZF Auto. US, Inc. v. Luxshare, Ltd., 142 S. Ct. 2078 (2022) ("AlixPartners"). The parties then briefed the question of how the Court's

decision impacts this case. (See Supplemental Memorandum of Law in Support of Motion to Vacate Order Granting Discovery Pursuant to 28 U.S.C. § 1782, and for Related Relief, dated July 1, 2022, Dkt. No. 28; Supplemental Memorandum of Law in Support of Application of Alpene Ltd. for an Order Directing Discovery from Elizabeth McCaul Pursuant to 28 U.S.C. §1782, dated July 22, 2022, Dkt. No. 30; Reply Supplemental Memorandum of Law in Further Support of Motion to Vacate Order Granting Discovery Pursuant to 28 U.S.C. § 1782, and for Related Relief, dated Aug. 5, 2022, Dkt. No. 31.)

The parties are fully familiar with the background of this case. Briefly, Alpene, a Hong Kong corporation, is a claimant in an investor-state treaty arbitration against the Republic of Malta ("Malta") before the World Bank's International Centre for the Settlement of Investment Disputes ("ICSID"). Alpene brought this case to obtain discovery from McCaul, a New York resident, in connection with the ICSID arbitration.

As explained in the M&O, 28 U.S.C. § 1782 authorizes federal courts to order persons in the United States to give testimony or produce documents "for use in a proceeding in a foreign or international tribunal." The statute requires: "'(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made; (2) that the discovery be for use in a proceeding before a foreign or international tribunal; and (3) that the application be made by a foreign or international tribunal or 'any interested person.'" In re Edelman, 295 F.3d 171, 175-76 (2d Cir. 2002) (quoting In re Esses, 101 F.3d 873, 875 (2d Cir. 1996)). At issue here is whether the ICSID arbitration panel constitutes a "foreign or international tribunal" within the meaning of § 1782.

In AlixPartners, the Supreme Court explained that "[t]he statute reaches only governmental or intergovernmental adjudicative bodies" and that "private adjudicatory bodies"

cannot be foreign or international tribunals. 142 S. Ct. at 2083. Consulting dictionary definitions and statutory history, the Court found that a "foreign tribunal" is "a tribunal imbued with governmental authority by one nation," and an "international tribunal" is "a tribunal imbued with governmental authority by multiple nations." Id. at 2087. Applying these principles to the ad hoc arbitration panel at issue in AlixPartners, which was established by a bilateral investment treaty between Lithuania and the Russian Federation, the Court noted that "a body does not possess governmental authority just because nations agree in a treaty to submit to arbitration before it" or because one of the parties is a sovereign. Id. at 2091. Rather, "[t]he relevant question is whether the nations intended that the [arbitral] panel exercise governmental authority," and in AlixPartners, "all indications [we]re that they did not." Id.

Thus, the inquiry is whether the treaty parties, in this case Malta and China, indicated an intent "to imbue the body in question [here, the ICSID arbitration panel] with governmental authority." Id. The Supreme Court did not set out any test or provide any guidelines for lower courts to follow in making this determination, but it acknowledged that a "tribunal" need not be a court, and it identified some factors that it considered in concluding that such intent was lacking in AlixPartners. Among the persuasive elements were that: (1) nothing in the applicable treaty reflected Russia's and Lithuania's intent that an ad hoc arbitration panel exercise governmental authority, (2) the ad hoc panel "function[ed] independently" of and was not affiliated with either Lithuania or Russia, (3) the panel consisted of "individuals chosen by the parties and lacking any official affiliation with Lithuania, Russia, or any other governmental or intergovernmental entity," (4) the panel received no government funding and the parties were responsible for paying fees and costs, and (5) the proceedings were confidential. Id. at 2090 (citations omitted).

The Bilateral Investment Treaty between Malta and China provides that a dispute between an investor and one of the contracting parties that is not resolved through negotiations can be submitted at the investor's choice to: (1) a court of appropriate jurisdiction in the country that is a party to the dispute (here, Malta); (2) arbitration under the auspices of the ICSID, or (3) ad hoc arbitration under the Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL"), like the arbitration panel in AlixPartners. (See Agreement Between the Government of Malta and the Government of the People's Republic of China on the Promotion and Protection of Investments, dated Feb. 22, 2009 ("Treaty"), annexed to the Declaration of Michael C. Keats, Esq., dated Nov. 11, 2021, as Ex. 3, Dkt. No. 16-3, art. 9(2), at 8.) In other words, the ICSID is one of several options an investor could elect to resolve a dispute. As the Court explained in AlixPartners, "[t]he inclusion of courts on the list" reflects Malta's and China's "intent to give investors the choice of bringing their disputes before a pre-existing governmental body" or to "one formed for the purpose of adjudicating investor state disputes." 142 S. Ct. at 2090. In other words, the inclusion of domestic courts as one option undercut the contention that the arbitration panel had governmental authority. However, the Court left open the possibility that sovereigns might imbue such an arbitration panel with official authority. Id. at 2091 ("Governmental and intergovernmental bodies may take many forms, and we do not attempt to prescribe how they should be structured.").

Alpene chose to initiate an arbitration under the ICSID. (Declaration of Edward Baldwin, Esq., dated Aug. 30, 2021, Dkt. No. 4-1, ¶¶ 5-6, Ex. 1.) As McCaul points out, the ICSID is an independent, self-contained system. The ICSID operates under the authority of the World Bank, an intergovernmental organization, and is an international arbitration institution established in 1966 for legal dispute resolution and conciliation between states and investors who

4

are nationals of other states.  (See *About ICSID*, ICSID, https://icsid.worldbank.org/About/ICSID (last visited Oct. 6, 2022).  As was the case with the ad hoc arbitration panel in AlixPartners, the applicable treaty did not itself create the ICSID panel, which "consists of individuals chosen by the parties and lacking any official affiliation with [the treaty nations.]"  AlixPartners, 142 S. Ct. at 2090.  (See Treaty, art. 9(6) at 9; Supplemental Declaration of Michael C. Keats, Esq., dated July 1, 2022, Dkt. No. 29, Exs. 35 & 36.)  The treaty is also silent as to whether it was the parties' intent "to imbue [the ICSID] with governmental authority."  142 S. Ct. at 2091.

There are a number of similarities between the ad hoc UNCITRAL arbitration panel in AlixPartners and the ICSID arbitration panel.  For example, both provide immunity for arbitrators absent intentional wrongdoing, and both require the parties to pay arbitration costs, including arbitrator fees.  (See ICSID ADMINISTRATIVE AND FINANCIAL REGULATIONS (2006), Dkt. No. 30-4, Reg. 14(3)(a); ICSID CONVENTION, REGULATIONS AND RULES, Dkt. No. 32-2, Rule 28.)  Those factors therefore do not distinguish one from the other.

However, there are some significant differences between the ICSID and the ad hoc panel at issue in AlixPartners.  As Alpene emphasizes, the ICSID has over 150 member states,[1] including Malta and China, which ratified the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention").  Member states can designate individuals to serve on the ICSID Panels of Arbitrators and Conciliators.[2]  (See CONVENTION ON THE SETTLEMENT OF INVESTMENT

---

[1]  The list of ICSID member states is available at https://icsid.worldbank.org/about/member-states/database-of-member-states.

[2]  The parties are not restricted to the ICSID Panels in selecting arbitrators, and in fact Alpene appointed an arbitrator not on ICSID's Panel of Arbitrators.  (See MEMBERS OF THE PANELS OF CONCILIATORS AND OF ARBITRATORS, Dkt. No. 30-6; Supplemental Declaration of Michael C. Keats, Esq., dated July 1, 2022, Dkt. No. 29, Exs. 35 & 36.)

5

DISPUTES BETWEEN STATES AND NATIONALS OF OTHER STATES, Dkt. No. 30-3, Art. 13; MEMBERS OF THE PANELS OF CONCILIATORS AND OF ARBITRATORS, Dkt. No. 30-6.)  In addition, each member state has a representative on the ICSID Administrative Council, which meets annually to adopt administrative and financial regulations and approve rules for ICSID-administered cases.  (Id.)  Indeed, the legal framework of the ICSID Convention creates a permanent institution, and provides that the resulting awards shall have the status of final judgments and are binding as a matter of public law in all ICSID member states.  ICSID awards are also entitled to full faith and credit in U.S. courts.  Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan, No. 19 CV 2424, 2022 WL 715215, at *3 (D.D.C. Mar. 10, 2022).  However, the fact that courts play a role in enforcing arbitration agreements and awards does not give an arbitral panel "governmental authority."  AlixPartners, 142 S. Ct. at 2089.

        The "animating purpose of § 1782 is comity" to foreign and international governmental bodies.  Id. at 2088.  The statute was intended to promote assistance and cooperation between the United States and foreign countries.  Thus, one question for this court is whether the ICSID exercises governmental authority such that granting discovery requests by parties in arbitrations before the ICSID would "promote[] respect for foreign governments and encourage[] reciprocal assistance."  Id.  Under the Court's analysis, it is hard to imagine how it would.  As McCaul points out, the ICSID (and investor-state arbitration generally) did not yet exist in 1964 when § 1782 was amended to include the phrase "foreign or international tribunals."  Id. at 2086.  And obviously, ICSID arbitral tribunals have no authority to provide reciprocal discovery assistance for United States proceedings.

        The Court in AlixPartners also referred to the need to interpret § 1782 in harmony with the Federal Arbitration Act, which authorizes discovery in U.S. arbitration proceedings only

in narrow circumstances.  It noted that construing § 1782 to reach foreign arbitrations would create a "notable mismatch between foreign and domestic arbitration."  Id. at 2088 ("[I]t's hard to conjure a rationale for giving parties to private foreign arbitrations such broad access to federal-court discovery assistance in the United States while precluding such discovery assistance for litigants in domestic arbitrations.") (quoting Servotronics, Inc. v. Rolls-Royce PLC, 975 F.3d 689, 695 (7th Cir. 2020)).  The same "mismatch" would apply here, were this court to permit Alpene to take discovery from McCaul.

This court's research uncovered no case law post-AlixPartners analyzing whether an ICSID arbitration panel is an international tribunal.  But it bears noting that until AlixPartners, federal courts uniformly held that investor-state arbitrations were eligible for § 1782 discovery.  While the Supreme Court did not address ICSID investor-state arbitrations specifically, by reaching out to decide this issue absent a circuit split, it did signal a desire to limit the availability of discovery in U.S. courts for international commercial arbitrations.

In sum, I find insufficient support for the argument that Malta and China intended to imbue the ICSID arbitration panel with governmental authority.  It therefore does not qualify as a "foreign or international tribunal" under § 1782, and McCaul's motion to vacate and for an order quashing and granting a protective order with respect to Alpene's document and deposition subpoenas is hereby granted.

SO ORDERED.

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated:  Brooklyn, New York
            October 27, 2022