UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

| | |
|---|---|
| IN RE APPLICATION OF ALPENE, LTD. FOR AN ORDER DIRECTING DISCOVERY FROM ELIZABETH McCAUL PURSUANT TO 28 U.S.C. § 1782 | **MEMORANDUM & ORDER** 21-MC-2547 (MKB) (RML) |

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Alpene Ltd. ("Alpene") commenced the above-captioned action on August 30, 2021, seeking an expedited order authorizing its counsel to issue subpoenas for documents and testimony to Elizabeth McCaul in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782. (Applicant's Mot. for Discovery ("Applicant's Mot."), Docket Entry No. 1; Applicant's Mem. in Supp. of Applicant's Mot., Docket Entry No. 5.)  On September 9, 2021, the Court referred Alpene's motion to Magistrate Judge Robert M. Levy.  (Order dated Sept. 9, 2021.)  On September 20, 2021, Judge Levy granted Alpene's motion for discovery.  (Order dated Sept. 20, 2021.)  On November 11, 2021, McCaul moved for an order vacating Judge Levy's September 20, 2021 order and quashing the subpoenas issued by Alpene or, in the alternative, staying the action pending disposition of a writ of certiorari filed with the United States Supreme Court. (McCaul's Notice of Mot. to Vacate Order, Docket Entry No. 14; McCaul's Mem. in Supp. of Mot. to Vacate Order, Docket Entry No. 15; McCaul's Mem. in Further Supp. of Mot. to Vacate, Docket Entry No. 24.)  Alpene opposed McCaul's motion.  (Applicant's Mem. in Opp'n to Mot. to Vacate, Docket Entry No. 22.)  Judge Levy held oral arguments on January 11, 2022.  (*See* Min. Entry dated Jan. 11, 2022.)  By Memorandum and Order dated February 3, 2022, Judge Levy stayed Alpene's application pending the Supreme Court's decision in *AlixPartners, LLP v. The Fund for Protection of Investors' Rights in Foreign States*, No. 21-518, 2021 WL 5858633 (Dec. 10, 2021).  (Mem. & Order dated Feb. 3, 2022.)  Following the Supreme Court's decision

in *ZF Automotive US, Inc. v. Luxshare, Ltd.*, --- U.S. ---, 142 S. Ct. 2078 (Mar. 23, 2022), the parties submitted supplemental briefing. (McCaul's Suppl. Mem. in Supp. of Mot. to Vacate, Docket Entry No. 28; McCaul's Reply Suppl. Mem. in Supp. of Mot. to Vacate, Docket Entry No. 31; Applicant's Suppl. Mem. in Supp. of Appl., Docket Entry No. 30.)

By Memorandum and Order dated October 27, 2022, Judge Levy granted McCaul's motion to vacate and for an order quashing and granting a protective order with respect to Alpene's document and deposition subpoenas (the "October 2022 Decision"). (Mem. & Order dated Oct. 27, 2010; *In re Alpene, Ltd.*, No. 21-MC-2547, 2022 WL 15497008 (E.D.N.Y. Oct. 27, 2022).) Alpene filed objections to the October 2022 Decision on November 10, 2022, (Applicant's R. 72(b) Objs. to the Oct. 2022 Decision ("Applicant's Mem."), Docket Entry No. 35), and McCaul responded to Alpene's objections on December 9, 2022, (McCaul's Mem. in Opp'n to Applicant's Mem. ("McCaul's Mem."), Docket Entry No. 37). For the reasons discussed below, the Court adopts the October 2022 Decision and denies Alpene's application.

### I. Background

#### a. Factual background

"Alpene is a claimant in an international arbitration proceeding against the Republic of Malta before the World Bank's International Centre for the Settlement of Investment Disputes (the 'ICSID' proceeding)." (Applicant's Mot. ¶ 1.) Alpene, "an entity organized and established in the Hong Kong Special Administrative Region of the People's Republic of China," "indirectly owns 100% of Pilatus Bank plc in Malta." (Req. for Arb. ¶ 3, annexed to Decl. of Edward Baldwin in Supp. of Applicant's Mot. ("Baldwin Decl.) as Ex. 1, Docket Entry No. 4-1.) Malta is a contracting state to the Convention on the Settlement of Investment Disputes Between States and Nationals of other States ("the ICSID Convention"), and a party to the Agreement Between

2

the Government of the People's Republic of China and the Government of Malta on the Promotion and Protection of Investments ("the BIT").  (*Id.* ¶ 5.)  Investment disputes regulated by the BIT which are not resolved "through negotiations within six months from the date of the written notification of the dispute, . . . shall be submitted by the choice of the investor" to (1) "the competent court" of either the People's Republic of China or Malta that is party to the dispute; (2) ICSID "under the Convention on the Settlement of Disputes between States and Nationals of Other states, done at Washington on March 18, 1965"; or (3) "an *ad hoc* international arbitration according to the Arbitration Rules of the United Nations Commission on International Trade Law."  (China-Malta Bilateral Inv. Treaty Art. 9(1)-(2), annexed to Decl. of Michael C. Keats as Ex. 3, Docket Entry No. 16-3.)

Alpene claims that "Maltese officials have taken wrongful, reckless, and politic[al]ly motivated actions with respect to Pilatus Bank" by directly and indirectly expropriating and destroying "Alpene's investment through a series of internationally wrongful acts."  (Req. for Arbitration ¶ 8.)  In particular, Alpene alleges that Maltese officials (1) took "wrongful control of the Bank"; (2) "strip[ed] all rights, including voting rights and decision-making rights, of the Bank's Board of Directors and shareholders"; (3) "engag[ed] in malicious investigations and harassment contrary to the favorable treatment received by domestically owned banks"; (4) took "wrongful actions that resulted in the revocation of Pilatus Bank's banking license"; and (5) "continued mistreatment and the failure to provide due process rights to the investors with respect to control of the investment."  (*Id.* ¶ 10.)

Alpene claims that McCaul "was central to several of the events" detailed in Alpene's Request for Arbitration to ICSID.  (Baldwin Decl. ¶ 10.)  According to Alpene, McCaul worked with the Malta Financial Services Authority to appoint the head of the Bank following its

3

takeover. In support of the proceedings before the ICSID, Alpene seeks the following from McCaul:

- Information regarding her selection of Mr. Connell to be the Bank's sole representative.

- Information regarding her negotiation of the agreement with [the Maltese Financial Services Authority ("MFSA")] regarding Mr. Connell's appointment as the sole representative of the Bank.

- Documents and information regarding her relationship and discussions with the former MFSA Chairman, and his deputies and business partners.

- Documents and information regarding her relationship and discussions with the current MFSA Chairman, and his deputies and business partners.

(Applicant's Mem. in Supp. of Applicant's Mot. 4.)

### b. The October 2022 Decision

Judge Levy granted McCaul's motion to vacate and for an order quashing and granting a protective order with respect to Alpene's document and deposition subpoenas. (October 2022 Decision at 7.) Judge Levy "found insufficient support for the argument that Malta and China intended to imbue the ICSID arbitration panel with governmental authority," and held that it "therefore does not qualify as a 'foreign or international tribunal' under § 1782." (*Id.*)

Judge Levy likened the ICSID panel to the ad hoc arbitration panel at issue in *AlixPartners*, noting that neither body was a creature of the applicable treaty and both were composed of individuals picked by the parties who lacked official affiliations with the treaty nations. (*Id.* at 5.) Among other similarities with the ad hoc arbitration panel in *AlixPartners*, Judge Levy found that "both provide immunity for arbitrators absent intentional wrongdoing, and both require the parties to pay arbitration costs, including arbitrator fees." (*Id.*)

4

Judge Levy also identified differences between the ICSID and the ad hoc panel at issue in *AlixPartners*. Judge Levy acknowledged that "ICSID has over 150 member states, including Malta and China," which ratified the ICSID Convention and can "designate individuals to serve on the ICSID Panels of Arbitrators and Conciliators." (*Id.*)

Judge Levy also noted that section 1782 was intended to promote comity among foreign and international governmental bodies, and observed that "granting discovery requests by parties in arbitrations before the ICSID" was unlikely to promote respect for foreign governments and encourage reciprocal assistance because "ICSID arbitral tribunals have no authority to provide reciprocal discovery assistance for United States proceedings." (*Id.* at 6.) In addition, Judge Levy noted the *AlixPartners* Court's skepticism of the "notable mismatch" which would occur by applying section 1782 to reach foreign arbitrations given the narrowness of discovery allowed in arbitrations governed by the Federal Arbitration Act, and observed that "[t]he same 'mismatch' would apply here" if he "permit[ted] Alpene to take discovery from McCaul." (*Id.* at 7.)

   c. **Alpene's objections to the October 2022 Decision**

Alpene objects to the October 2022 Decision, arguing that Judge Levy erred by not recognizing that ICSID arbitration proceedings are different from the arbitration that the Supreme Court considered in *ZF Automotive*, rendering that case's holding inapplicable. (Applicant's Mem. 1.) First, Alpene argues that the Supreme Court "left open" the issue of whether ICSID proceedings qualify as intergovernmental bodies pursuant to section 1782. (*Id.* at 6.) Second, Alpene contends that Judge Levy erred in finding that "there is no distinction between *ad hoc* panels and ICSID tribunals." (*Id.* at 7.) In support, Alpene insists that "ICSID arbitration proceedings are clothed with governmental authority" because ICSID (1) "is an

5

organization established and . . . run by States, including China and Malta"; (2) "is governed and controlled by an Administrative Council and a Secretariat, with the former composed of at least one representative of each ICSID Member State"; (3) "is funded by Member States through the World Bank, and Member States review and approve budgets for each fiscal year"; and (4) has a Convention which "provides that if a party fails to comply with a tribunal's award, the other party can seek to have the pecuniary obligations recognized and enforced directly in the courts of any ICSID Member State as though it were a final judgment of that State's courts." (*Id.* at 8–9.) Third, Alpene argues that Judge Levy erred in analogizing the dispute resolutions at issue in *ZF Automotive* with that used by ICSID given the difference in scope. (*Id.* at 10.) Fourth, Alpene argues that Judge Levy erred in stating that "ICSID proceedings lack 'any official affiliation' with governments" because "ICSID Members designate panelists from which adjudicators are drawn and to which both China and Malta have appointed panelists." (*Id.* at 11.) Fifth, Alpene challenges Judge Levy's statement "that the China-Malta Treaty's inclusion of domestic courts as a potential forum for dispute resolution 'undercut[s] the contention that the arbitration panel had governmental authority.'" (*Id.* (quoting Oct. 2022 Decision at 4).) Lastly, Alpene argues that principles of comity support its application. (*Id.* at 12–13.)

McCaul contends that Judge Levy's ruling "was supported by an application of the required analysis set forth in *AlixPartners* to the facts of this case." (McCaul's Mem. 7.) In support, McCaul argues that Alpene made "conclusory statements" about the nature of ICSID and its relationship to governmental authority which "are simply not supported by the controlling authority." (*Id.* at 11.) McCaul also argues that "the ICSID falls into the same category as the ad hoc arbitration panel in *AlixPartners*" because the 1965 Convention on the Settlement of Investment Disputes between States and Nationals of Other States which created the ICSID did

6

not require member states to submit particular disputes to conciliation or arbitration. (*Id.*) Further, McCaul notes that "ICSID's jurisdiction is based solely on the consent of Alpene and Malta," and argues that "[c]onsenting to arbitration is not a sovereign act," but rather "the way a panel derives its authority in a *private arbitration*." (*Id.* at 12.) McCaul also argues that "ICSID Member States['] . . . role in enforcing an ICSID award" does not imbue ICSID proceedings with governmental authority.[1] (*Id.* at 14.)

## II. Discussion

### a. Standards of review

#### i. Appeal of magistrate judge decision

Under the Federal Magistrates Act, 28 U.S.C. § 636, and Rule 72 of the Federal Rules of Civil Procedure, "[a] magistrate judge is authorized 'to make findings as to non-dispositive pretrial matters, . . . which may not be disturbed by a district judge absent a determination that such findings were clearly erroneous or contrary to law.'" *Ebo v. N.Y. Methodist Hosp.*, No. 12-CV-4432, 2015 WL 4078550, at *4 (E.D.N.Y. July 6, 2015) (alteration in original) (quoting *Storms v. United States*, No. 13-CV-811, 2014 WL 3547016, at *4 (E.D.N.Y. July 16, 2014)); *see also Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007). "The Second Circuit has not addressed whether a magistrate judge's ruling on a Section 1782 application is dispositive within the meaning of Rule 72. But most courts in this District review magistrate judges' opinions granting or denying Section 1782 applications for clear error . . . ." *In re Batbold*, No. 21-MC-218, 2023 WL 2088524, at *3 (S.D.N.Y. Feb. 17, 2023); *see also In re Hulley Enters. Ltd.*, 400

---

[1] McCaul also argues that Alpene's application fails to satisfy the factors outlined by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246–47 (2004). (McCaul's Mem. 16–19.) The Court does not address these arguments because it resolves McCaul's motion on other grounds.

7

F. Supp. 3d 62, 71 (S.D.N.Y. 2019) ("This [c]ourt agrees with the majority of courts finding that rulings on § 1782 applications are *not* dispositive."). An order is clearly erroneous if, based on all the evidence, a reviewing court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Dumitru*, 991 F.3d 427, 436 (2d Cir. 2021) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)); *Ebo*, 2015 WL 4078550, at *4 (same). An order is only contrary to law if it misapplies existing law and the district judge is convinced that a mistake has been made. *In re Gordon*, 780 F.3d 156, 158 (2d Cir. 2015).

Under this highly deferential standard, magistrate judges are "afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused." *Bouchard v. U.S. Tennis Ass'n, Inc.*, No. 15-CV-5920, 2017 WL 3868801, at *1 (E.D.N.Y. Sept. 5, 2017) (quoting *Aboeid v. Saudi Arabian Airlines Corp.*, No. 10-CV-2518, 2011 WL 5117733, at *2 (E.D.N.Y. Sept. 6, 2011)). Therefore, "a party seeking to overturn a discovery order [by a magistrate judge] bears a heavy burden." *Wager v. G4S Secure Integration*, No. 19-CV-3547, 2021 WL 293076, at *2 (S.D.N.Y. Jan. 28, 2021) (quoting *Grant v. Her Imps. NY, LLC*, No. 15-CV-5100, 2017 WL 9938287, at *2 (E.D.N.Y. Mar. 20, 2017)). "[T]he magistrate judge's findings should not be rejected merely because the court would have decided the matter differently." *Grief v. Nassau Cnty.*, 246 F. Supp. 3d 560, 564 (E.D.N.Y. 2017) (quoting *Ross Univ. Sch. of Med., Ltd v. Brooklyn-Queens Health Care, Inc.*, No. 09-CV-1410, 2013 WL 1334271, at *5 (E.D.N.Y. Mar. 28, 2013)).

### ii. Discovery in aid of a foreign proceeding

"Section 1782 provides that, upon an 'application of any interested person,' the 'district court of the district in which a person resides or is found may order him . . . to produce a document . . . for use in a proceeding in a foreign or international tribunal.'" *In re Accent Delight*

*Int'l Ltd. v. Adelson*, 869 F.3d 121, 123 (2d Cir. 2017) (quoting 28 U.S.C. § 1782). Section 1782 also "permits [district courts] to 'prescribe the practice and procedure, which may be in whole or part *the practice and procedure of the foreign country or the international tribunal*, for taking the testimony or statement or producing the document or other thing.'" *ZF Automotive US, Inc. v. Luxshare, Ltd.*, --- U.S. at ---, 142 S. Ct. at 2087 (quoting 28 U.S.C. § 1782).

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Fed. Repub. of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 147 (2d Cir. 2022) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004)). District courts may grant a section 1782 petition if "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)); *In re Accent*, 869 F.3d at 128 (same). "Once a court determines that the statutory prerequisites are met, it is 'free to grant discovery in its discretion,'" but "must take 'into consideration the twin aims of the statute, namely, providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 676 (2d Cir. 2022) (first citing *Brandi-Dohrn*, 673 F.3d at 80; then citing *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015)).

9

### b. Section 1782 does not authorize Alpene's discovery requests

Judge Levy appropriately determined that Alpene is not entitled to the discovery it seeks pursuant to section 1782.

In *ZF Automotive*, the Supreme Court "held that 28 U.S.C. § 1782 does not authorize discovery in aid of private arbitration," *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, No. 22-CV-832, 2023 WL 2961739, at *2 n.1 (2d Cir. Apr. 17, 2023), and "reaches only governmental or intergovernmental adjudicative bodies," *ZF Automotive*, --- U.S. at ---, 142 S. Ct. at 2083. The Court explained that a foreign tribunal "is a tribunal imbued with governmental authority by one nation," and an international tribunal "is a tribunal imbued with governmental authority by multiple nations." *Id.* at ---, 2087. Applying those definitions, the Supreme Court held that a "private dispute-resolution organization" that was "formed by the parties," with no government involvement in the creation of its procedures did not qualify as a governmental body. *Id.* at ---, 2089. The Supreme Court also held that an ad hoc arbitration panel adjudicating a dispute with a sovereign on one side and where "the option to arbitrate is contained in an international treaty rather than a private contract" did not qualify as a foreign proceeding covered by section 1782. *Id.* at ---, 2089. In reaching that conclusion, the Supreme Court noted that (1) the treaty provisions permitted a choice between four forums, including courts, which evidenced the sovereigns' intent to provide "the choice of bringing . . . disputes before a pre-existing governmental body"; (2) "nothing in the treaty reflects [the sovereigns'] intent that an ad hoc panel exercise governmental authority," as "the treaty does not itself create the panel," but instead references rules governing the panel's formation and procedures, and "the ad hoc panel functions independently of and is not affiliated with either" sovereign; (3) the ad hoc panel created by the sovereigns' treaty "is materially indistinguishable in form and function from the"

10

private dispute-resolution panel the Supreme Court deemed not a governmental body, and similarly derived its authority from the consent of the parties to the arbitration, "not because [the sovereigns] clothed the panel with governmental authority." *Id.* ---, at 2090–91 (citations omitted).

Applying the Supreme Court's definitions and logic in *ZF Automotive*, the ICSID arbitration panel is not a foreign or international tribunal within the meaning of section 1782. Like the ad hoc arbitration panel that was at issue in *ZF Automotive*, the ICSID panel was created by a treaty among sovereign nations and derives its power from the consent of the parties — Alpene and Malta — before it. Also, similar to the *ZF Automotive* ad hoc arbitration panel, the ICSID panel is one of several options — including "the competent court" of either China or Malta — which Alpene and Malta may choose from to litigate their dispute. (China-Malta Bilateral Inv. Treaty Art. 9(1)-(2).) The existence of the "competent court" option in the BIT evidences the member states' intention to provide for "the choice of bringing [] disputes before a pre-existing governmental body," not to imbue the ICSID panel with governmental authority. *ZF Automotive*, --- U.S. at ---, 142 S. Ct. at 2090. Accordingly, the Court finds that China and Malta did not intend to imbue the ICSID panel with governmental authority of the type required for section 1782 to apply. *See In re Webuild S.P.A.*, No. 22-MC-140, 2022 WL 17807321, at *3 (S.D.N.Y. Dec. 19, 2022) (holding that a tribunal was not a "'foreign or international tribunal' within the meaning of Section 1782" because "Italy and Panama did not intend to imbue the ICSID Panel with governmental authority").

11

### III. Conclusion

For the reasons stated above, the Court grants McCaul's motion to vacate and for an order quashing and granting the protective order as to Alpene's document and deposition subpoenas.

Dated: August 15, 2023
       Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

12